1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

In re:

Case No.  17-cv-02045-PJH

8

FORGE GROUP POWER PTY LTD.,

9

Debtor in Foreign Proceeding.

Bankr. Case No. 17-30008-DM

10

**ORDER ON BANKRUPTCY APPEAL**

11

MARTIN JONES, in his capacity as
Foreign Representative and Liquidator of
Forge Group Power Pty Ltd.,

12
13

Appellant,

14

v.

15

APR ENERGY HOLDINGS LIMITED, et
al.,

16

Appellees.

17
18

Martin Jones appeals from the March 22, 2017, order of the bankruptcy court

19

denying the petition for recognition of a foreign proceeding under Chapter 15 of the

20

Bankruptcy Code.  For the reasons set forth below, the order denying recognition is

21

VACATED and the case is REMANDED to the bankruptcy court for further proceedings.

22

**BACKGROUND**

23

**I.      Factual Summary[1]**

24

Appellant and petitioner Martin Jones ("Jones") is the liquidator and foreign

25

26
27
28

---

[1]   The summary of facts is taken primarily from the representations of the Chapter 15
Petition for Recognition of a Foreign Proceeding ("Pet.") filed January 3, 2017, by Martin
Bruce Jones.  Bankr. Case No. 17-30008-DM, Doc. No. 1 (Jones Appx., Ex. 1).  The
court will refer to the filings in the record by the bankruptcy court docket entry numbers as
applicable.

representative of the debtor, Forge Group Power Pty Ltd. ("Forge Power" or "debtor"), an Australian company which has been in liquidation proceedings in Australia since February 2014. Forge Power conducted its business almost exclusively in Australia. According to Jones, Forge Power did not conduct any business in the United States and had limited if any connection to the United States. Jones Decl. ISO Pet. ¶ 8 (Bankr. doc. no. 3).

Forge Power, formerly known as CTEC Pty Ltd, was acquired by Forge Group Limited ("FGL") in 2012; Forge Power is a wholly owned subsidiary of FGL. FGL and 36 of its subsidiaries, collectively referred to as the "Forge Group," are involved in engineering, procurement, and construction of mining and oil/gas projects. The Forge Group has four key divisions—power, construction, asset management, and minerals/resources—with operations in Australia, New Zealand, North America, Asia, and Africa.

On January 23, 2013, Forge Power entered into a Design Build Operate and Maintain Contract with Horizon Power, a state-owned public utility in Western Australia, under which Forge Power was to design a power station, and supply, test, and commission all required equipment. On March 5, 2013, Forge Power entered into an agreement with General Electric International, Inc. ("GEI") under which Forge Power agreed to lease four mobile gas turbine generator sets (the "lease agreement" for the "turbines"). In September 2013, Forge Power took possession of the turbines at GEI's facility in Houston, Texas, and shipped them to the power plant site at Port Hedland in Western Australia. Walter Decl. ISO Opp. ¶ 8 (Bankr. doc. no. 41-1; APR Appx. 1139).

In October 2013, GEI sold its power rental business to appellee APR Energy Holdings Ltd. ("APR"), resulting in APR becoming the owner of the membership interests in several newly-formed GEI subsidiaries, including appellees Power Rental Asset Co. Two, LLC ("APR AssetCo") and Power Rental Op Co. Australia, LLC ("APR OpCo"). Appellees' Br. (doc. no. 31) at 6. APR AssetCo was the owner of the turbines, and APR

OpCo was the assignee of the lease agreement and received the rental payments for the turbines. *Id.*

### A. Australian Liquidation Proceeding

In February 2014, the directors of the Forge Group companies, including debtor Forge Power, concluded that each of the companies of the Forge Group in Australia was likely to become insolvent, and that each of the companies should enter administration under Australian law. On February 11, 2014, each of the companies in the Forge Group in Australia commenced a voluntary administration proceeding by appointing Jones and two others to serve as administrators pursuant to section 436A of the Australian Corporations Act 2001. Pet. ¶ 19. At the time Forge Power entered into voluntary administration in February 2014, the turbines were located on Horizon Power's land in Port Hedland, Australia. Jones Decl. ISO Pet. ¶ 22.

On March 18, 2014, the creditors of each of the Forge Group companies subject to voluntary administration, including Forge Power, resolved that each company should be wound up and immediately placed into liquidation. Jones was appointed to serve as a liquidator of debtor Forge Power and is currently its sole acting liquidator. Pet. ¶ 20.

### B. Florida Litigation and Interim Arrangement Deed

On or about April 16, 2014, APR OpCo, APR AssetCo, and GEI filed a lawsuit in the Middle District of Florida (C-14-0445-TJC) against Forge Power and other named defendants,[2] seeking to recover the four turbines. Among other things, the plaintiffs alleged that the voluntary administration was an event of default under the lease agreement.

---

[2] The Florida action was also brought against Australia and New Zealand Banking Group Limited ("ANZ") which became the Forge Group's principal financier on July 2, 2013, according to the Chapter 15 petition. On or about the same date, certain companies within the Forge Group, including Forge Power, entered into security agreements and other finance documents with ANZ. Pet. ¶ 7. On February 11, 2014, the day Forge Power commenced the administration, ANZ appointed receivers and managers who took possession and control over Forge Power's principal assets, including the turbines. Appellees' Br. at 8 n.3.

On July 22, 2014, the receivers of Forge Power entered into an Interim Arrangement Deed ("IAD") with APR OpCo, APR AssetCo and GEI (the "APR parties"), which purported to resolve the manner in which the dispute regarding the turbines would be decided. The parties agreed that the question of who had superior title to the turbines would be determined by a court in Australia. The APR parties agreed to discontinue the Florida proceeding, and agreed that they would "not bring, or pursue, nor procure that any third party bring or pursue, any [c]laim against Forge . . . in any jurisdiction in respect of any matter the subject of or relating to the allegations in the [Florida proceeding]."

The APR parties also agreed to provide Forge Power with a standby letter of credit in the amount of $44 million (the "LOC"), with the understanding that Forge Power would call on the LOC only if it prevailed in the Australian proceeding. The LOC was issued by Bank of America, N.A., from a branch in San Francisco, California, to a branch of Bank of America, N.A. in Sydney, Australia, and was payable to Forge Power upon presentation of required documentation to the Bank of America branch office in Sydney. For its part, Forge Power agreed to allow the APR parties to re-lease the turbines. Under the IAD, the turbines were returned to the APR parties. The Florida action was dismissed with prejudice.

### C. Australian Litigation

On August 1, 2014, in accordance with the IAD, the receivers brought an action on behalf of Forge Power in the Supreme Court of New South Wales, Australia, against APR OpCo, APR AssetCo, and GEI. This litigation concerned whether Forge Power or the APR parties had superior title to the turbines under Australian law. On February 11, 2016, the Australian court issued a decision that under the Australian Personal Property Securities Act 2009 (the "PPSA"), APR AssetCo's unperfected security interest vested in Forge Power immediately prior to the appointment of the voluntary administrators on February 11, 2014. This decision rendered APR AssetCo a general unsecured creditor of Forge Power. The APR parties appealed the decision and the appeal was heard on September 23, 2016. The Court of Appeal affirmed the lower court's decision on

February 6, 2017. On March 1, 2017, the APR parties filed a petition with the High Court for special leave to appeal the decision of the Court of Appeals; the Australian High Court declined review and dismissed the petition on June 15, 2017.

### D. Texas Litigation

On July 12, 2016, APR, as a creditor of APR AssetCo and APR OpCo, filed another lawsuit against Forge Power, this time in a Texas state court, seeking a ruling that the APR parties—not Forge Power—own the turbines. Forge Power did not respond to the complaint, and after entry of default, the Texas court entered partial default judgment as to liability only, ordering that the transfers to Forge Power of the turbines "are hereby avoided as fraudulent transfers in accordance with the Texas Uniform Fraudulent Transfer Act." *APR Energy v. Forge Group Power,* No. 2016-46548 (Tex. Dist. Ct., Nov. 3, 2016) (Bankr. doc. no. 5-1). But in December 2016, before the Texas court entered a final judgment, Forge Power filed a special appearance to request dismissal for lack of personal jurisdiction.

After holding a hearing, the Texas court granted Forge Power's special appearance, held that it did not have personal jurisdiction over Forge Power, and dismissed the case. The Texas court vacated all prior orders, including the default judgment against Forge Power as to liability. APR moved for rehearing or new trial, which was denied on May 5, 2017. On May 8, 2017, APR filed a notice of appeal from the Texas court ruling. Jones represents that oral argument in the Texas state court matter is set for March 7, 2018. Doc. no. 41.

### E. Other Proceedings

On June 20, 2017, the APR parties filed a request for arbitration with the London Court of International Arbitration ("LCIA"). In that request, the APR parties sought arbitration to resolve the question of superior right and title to, and interest in, the turbines and power generation facility, thereby seeking to relitigate the dispute that was subject to the final judgment in the Australian proceeding. The APR parties sought arbitration on the ground that the parties to the IAD amended the arbitration provision of the original

5

1  lease agreement for the turbines, to submit the dispute to arbitration under certain

2  conditions precedent to arbitration, which the APR parties asserted had been satisfied.

3  Specifically, the APR parties represented that the IAD creates a right and obligation to

4  arbitrate if an Australian court, as defined in the IAD, is unwilling to hear the matter or if

5  the court declines jurisdiction to resolve the claim.  The APR parties asserted that the

6  High Court of Australia declined to exercise appellate jurisdiction over the decision of the

7  court of appeals, thereby triggering their right to arbitration.

8  On June 21, 2017, APR AssetCo filed a complaint in San Francisco Superior

9  Court, against Forge Power, its receivers, and Bank of America.  That action was

10  removed to the district court on June 23, 2017, as Case No. C-17-3621 RS.[3]  In that

11  action, APR AssetCo filed an application for a temporary restraining order and for an

12  order to show cause why a preliminary injunction should not issue enjoining Forge Power

13  from drawing on the $44 million LOC and prohibiting the bank from making payment of

14  any of the LOC proceeds to Forge Power until conclusion of the LCIA arbitration.  After

15  holding a hearing on the matter, the court denied APR AssetCo's application.

16  Subsequently, APR AssetCo voluntarily dismissed the action without prejudice.[4]

17  **II.    Procedural History in Bankruptcy Court**

18  On January 3, 2017, before the Texas court had dismissed APR's fraudulent

19  transfer lawsuit for lack of personal jurisdiction, Jones filed a Chapter 15 petition for

20  recognition of a foreign proceeding, in the United States Bankruptcy Court for the

21  Northern District of California.  Jones sought recognition by the bankruptcy court that

22  Forge Power's voluntary liquidation is a "foreign main proceeding" and that he is a

23  "foreign representative" under Chapter 15 of the Bankruptcy Code.

24              [Jones] seeks chapter 15 recognition of the Australian
25              Proceeding, and the entry of related provisional relief, to

26  _____

27  [3]  Forge Power sought judicial consideration whether the removed action was related to
the present bankruptcy appeal; the court determined that the cases were not related.

28  [4]  The current status of the APR parties' request for arbitration with the LCIA is not
before the court.

6

prevent creditors from continuing litigation efforts in the United States designed to frustrate the Australian Proceeding contrary to principles of comity and international standards of fair play and justice. Absent chapter 15 relief and the grant of provisional relief, individual unsecured creditors of the Debtor, who have commenced litigation in the United States with respect to the very same transactions and occurrences that their affiliates are litigating in Australia, stand to improperly "jump ahead" of other secured and unsecured creditors in violation of Australian law. These actions offend the very notion of chapter 15, which, among other things, is intended to facilitate the centralization of disputes in cross-border insolvency cases before the courts sitting in the jurisdiction of a debtor's center of main interests. The Debtor's property interest under Australian law in assets located in Australia is a core issue to the Australian Proceeding. Chapter 15 was enacted precisely to prevent aggrieved creditors from pursuing a worldwide race to the courthouse against international debtors and their property.

Pet. at 3.

Jones alleged that Forge Power was a "debtor" as defined in 11 U.S.C. § 109(a) because Forge's principal asset in the United States was an undrawn $100,000 retainer in California with Alston & Bird LLP, counsel for Forge Power in connection the Chapter 15 case. Pet. ¶ 6. Section 109(a) of the Bankruptcy Code states that "notwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under [the Bankruptcy Code]." 11 U.S.C. § 109(a); see 11 U.S.C. § 1502(1) (defining debtor for purposes of Chapter 15). The petition represented that the funds were being held in an interest-bearing client trust account with Wells Fargo Bank N.A. in San Francisco, California. Jones further argued that because § 109 is a nominal threshold requirement, this retainer would be more than sufficient to establish Forge Power as a "debtor" under the Bankruptcy Code. Mem. ISO Pet. at 3 (Bankr. doc. no. 2).

Upon filing the Chapter 15 petition on January 3, 2017, Jones also filed an emergency motion for provisional relief and temporary stay of any actions against Forge Power and its assets in the United States, including a stay of the Texas state court action which was set for a hearing on January 6, 2017. Bankr. doc. no. 5. On January 5, 2017,

APR filed an opposition and the bankruptcy court held a hearing on the emergency

motion.  The court denied the request to stay the Texas state court action, but entered an

order temporarily enjoining APR from enforcing any judgment against Forge Power, and

enjoining Forge Power from demanding payment under the LOC.  Bankr. doc. no. 16.

On February 9, 2017, APR filed an opposition to the Chapter 15 petition, and

Jones filed a reply on February 27, 2017.  The bankruptcy court held a hearing on the

petition for recognition on March 16, 2017, and issued an order denying the petition for

the reasons stated at the hearing.  At the hearing, Bankruptcy Judge Montali denied the

petition "because in my mind the retainer . . . is property in a technical sense . . . but it's

illusory because there is a string attached to it if the lawyer ceases to represent[,] and as

the lawyer does work, the retainer is consumed."  Jones Appx., Ex. 15 ("Tr.") at 73.  He

added,

> [P]roperty suggests something more than depositing money
> with a law firm and then filing. . . .  I'm going to say that when
> the sole property in the U.S. is money delivered to an attorney
> to qualify for property, that simply won't work. . . . I don't think
> it's property in the traditional sense that the debtor has
> unfettered use of it. . . . Handing it to a lawyer, it is either
> consumed as the lawyer does work or it's subject to the
> lawyer's right to a reasonable fee as he or she does work.

Tr. at 73-74.  Jones filed a notice of appeal on April 5, 2017, and filed his opening brief on

June 14, 2017.  The court granted the request of amici curiae to file a brief in support of

Jones.  Appellees APR, APR AssetCo and APR OpCo filed a responsive brief, and Jones

filed a reply.  The court determines that no oral argument is necessary; the matter is fully

briefed and submitted.

## ISSUES PRESENTED

I.      Whether the eligibility requirements of 11 U.S.C. § 109(a) apply to a foreign debtor

that seeks recognition of its foreign insolvency proceeding under Chapter 15 of the

Bankruptcy Code.

II.     Whether an attorney retainer is sufficient "property in the United States" for

eligibility as a debtor under 11 U.S.C. § 109(a).

**STANDARD OF REVIEW**

The court reviews questions of law de novo.  *In re Chang*, 163 F.3d 1138, 1140 (9th Cir. 1998).

**DISCUSSION**

**I.     Applicability of Section 109 to Chapter 15 Proceedings**

The question whether § 109(a) applies to a debtor seeking recognition of a foreign proceeding under Chapter 15 presents an issue of statutory construction that is reviewed de novo.  *In re Rodriguez Mendez,* 367 B.R. 109, 113 (9th Cir. B.A.P. 2007).

**A.     Chapter 15 Framework**

Chapter 15, entitled "Ancillary and Other Cross-Border Cases," was added to the Bankruptcy Code with the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the 2005 Act), replacing former 11 U.S.C. § 304 to govern cases of cross-border insolvency.[5]  Chapter 15 incorporates the Model Law on Cross-Border

---

[5]   Former 11 U.S.C. § 304 (repealed 2005) provided as follows:

> (a) A case ancillary to a foreign proceeding is commenced by the filing with the bankruptcy court of a petition under this section by a foreign representative.
> (b) Subject to the provisions of subsection (c) of this section, if a party in interest does not timely controvert the petition, or after trial, the court may--
>> (1) enjoin the commencement or continuation of--
>>> (A) any action against--
>>>> (i) a debtor with respect to property involved in such foreign proceeding; or
>>>> (ii) such property; or
>>> (B) the enforcement of any judgment against the debtor with respect to such property, or any act or the commencement or continuation of any judicial proceeding to create or enforce a lien against the property of such estate;
>> (2) order turnover of the property of such estate, or the proceeds of such property, to such foreign representative; or
>> (3) order other appropriate relief.
> (c) In determining whether to grant relief under subsection (b) of this section, the court shall be guided by what will best assure an economical and expeditious administration of such estate, consistent with--
>> (1) just treatment of all holders of claims against or interests in such estate;
>> (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;
>> (3) prevention of preferential or fraudulent dispositions of property of such estate;

1 Insolvency[6] (the "Model Law"), which was promulgated by the United Nations

2 Commission on International Trade Law in 1997, to encourage cooperation between the

3 United States and foreign countries with respect to transnational insolvency cases.

4 House Report No. 109-31, Pt. 1, 109th Cong., 1st Sess. 105-106 (Apr. 8, 2005) ("H.

5 Rep."), *reprinted in* 2005 U.S.C.C.A.N. 88, 169. The 2005 Act amended section 103 of

6 the Bankruptcy Code to clarify the provisions of the Code that apply to chapter 15:

7 Chapter 1, sections 307, 362(n), 555 through 557, and 559 through 562. 11 U.S.C.

8 § 103(a). *See* H. Rep. at 118.

9       Chapter 15 provides a procedural framework by which, as relevant here, a "foreign

10 representative" may seek assistance in the United States in connection with a "foreign

11 proceeding," as those terms are defined in section 101(23) and (24). 11 U.S.C.

12 § 1501(b)(1). In particular, a "foreign proceeding" is defined in § 101(23) as "a collective

13 judicial or administrative proceeding in a foreign country" in which "the assets and affairs

14 of the debtor are subject to control or supervision by a foreign court, for the purposes of

15 reorganization or liquidation." As stated in the legislative history, cases brought under

16 Chapter 15 are intended to be ancillary to cases brought in a debtor's home country,

17 unless a full United States bankruptcy case is brought under another chapter. H. Rep. at

18 106. Section 1508 provides that in interpreting Chapter 15, "the court shall consider its

19 international origin, and the need to promote an application of this chapter that is

20 consistent with the application of similar statutes adopted by foreign jurisdictions." 11

21 U.S.C. § 1508.

22

23

24

25       (4) distribution of proceeds of such estate substantially in accordance with
the order prescribed by this title;

      (5) comity; and

26       (6) if appropriate, the provision of an opportunity for a fresh start for the
individual that such foreign proceeding concerns.

27 [6]   The Model Law and current version of the accompanying Guide to Enactment and
Interpretation (rev. 2013) are available at http://www.uncitral.org/uncitral/en/

28 uncitral_texts/insolvency/1997Model.html.

Section 1502 provides definitions for use in Chapter 15 only, including the term "debtor" to mean "an entity that is the subject of a foreign proceeding." 11 U.S.C. § 1502(1). The legislative history explains, "'Debtor' is given a special definition for this chapter. This definition does not come from the Model Law, but is necessary to eliminate the need to refer repeatedly to 'the same debtor as in the foreign proceeding.'" H. Rep. at 107.

Section 1504 establishes that "[a] case under this chapter is commenced by the filing of a petition for recognition of a foreign proceeding under section 1515." By providing that a petition for recognition commences a "case" under title 11, this section "invokes a number of other useful procedural provisions." H. Rep. at 108 (citing 28 U.S.C. § 1334). For Chapter 15 cases, 28 U.S.C. §§ 157 and 1334 provide for jurisdiction and procedures, and 28 U.S.C. § 1410 governs venue.

Section 1515(a) provides that a foreign representative applies to the court for recognition by filing a petition for recognition of a foreign proceeding; sections 1515(b)-(d) establish the procedural requirements for a petition for recognition and accompanying documentation. 11 U.S.C. § 1515. *See* H. Rep. at 112 ("This section follows article 15 of the Model Law with minor changes."). Under Section 1517, an order of recognition shall be entered if the following requirements are satisfied: (1) the proceeding is either a foreign main proceeding, pending in the country where the debtor has the center of its main interests, or a foreign nonmain proceeding, pending in the country where the debtor has an establishment, as defined by § 1502; (2) the foreign representative is a person or body; and (3) the petition meets the requirements of § 1515. 11 U.S.C. § 1517(a). *See* H. Rep. at 113.

Upon recognition of a foreign main proceeding, § 1520 implements the automatic stay provisions of § 362, subject to certain exceptions, and other protections with respect to the debtor and the debtor's property within the territorial jurisdiction of the United States. Section 1521 further authorizes the court to "grant any appropriate relief" at the request of the foreign representative upon recognition of a foreign proceeding, where

1    necessary to effectuate the purpose of Chapter 15 and to protect the debtor's assets or

2    the creditors' interests.

3         **B.    Section 109 Eligibility Requirements**

4         Jones appeals from the bankruptcy court's holding that the debtor eligibility

5    requirements under § 109(a) apply to a debtor seeking recognition of a foreign

6    proceeding under Chapter 15.  In the absence of controlling Ninth Circuit authority, the

7    bankruptcy court followed the holding of *In re Barnet*, 737 F.3d 238, 246 (2d Cir. 2013).

8    There, the Second Circuit held that before a bankruptcy court may grant recognition of

9    the foreign proceeding, the debtor that is the subject of the foreign proceeding must meet

10   the requirements of § 109(a).

11        In *In re Barnet,* the foreign representatives and liquidators of Octaviar

12   Administration Pty Ltd ("OA"), an Australian company under liquidation, filed a Chapter 15

13   petition for recognition of the Australian proceeding as a foreign main proceeding

14   pursuant to § 1515.  Before filing the Chapter 15 petition in the bankruptcy court, the

15   foreign representatives had commenced a lawsuit in Australia against affiliates of the

16   debtor to recover assets for the benefit of OA's creditors.  The defendants in the

17   Australian litigation objected to the Chapter 15 petition on several grounds, including that

18   OA had no domicile, place of business or property in the United States as required by

19   § 109(a).  The bankruptcy court issued an order granting recognition, from which the

20   objectors appealed, and granted a motion for discovery filed by the foreign

21   representatives.  The Second Circuit granted the parties' joint application for direct

22   appeal from the bankruptcy court's order of recognition and stayed discovery pending

23   resolution of the appeal.

24        *In re Barnet* presented the Second Circuit with an issue of first impression:

25   whether § 109(a) applies to a debtor in a Chapter 15 proceeding.  The Second Circuit

26   interpreted the plain language of the statute in straightforward fashion to hold that § 109

27   applies to Chapter 15 cases:

28

- Section 103(a) of Title 11 provides that, other than for an exception not relevant here, Chapter 1 "of this title ... appl[ies] in a case under chapter 15."

- Section 109(a) creates a requirement that must be met by any debtor: "Notwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title."

- Section 109 is within Chapter 1 of Title 11 and so, by the plain terms of the statute, it applies "in a case under chapter 15."

*In re Barnet*, 737 F.3d at 247.  The Second Circuit concluded that a foreign representative petitioning for recognition of a foreign proceeding under § 1517 must show that the debtor satisfies the requirements of § 109(a) before a bankruptcy court may grant recognition.  The court held that recognition was granted in error and remanded the case because the foreign representatives made no attempt to establish that the debtor had a domicile, place of business, or property in the United States.  737 F.3d at 247.

### 1.    Plain Language of Statute

Jones contends that *In re Barnet* was wrongly decided because the statutory language gives rise to more than one reasonable interpretation and the Second Circuit failed to find the interpretation that is "most harmonious with its scheme and with the general purposes that Congress manifested."  Jones Opening Br. at 13 (citing *United States v. Koyomejian*, 946 F.2d 1450, 1453 (9th Cir. 1991)).  This argument overlooks the plain language of the statute.  The starting point of statutory interpretation is the language of the statute itself.  *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980).  "Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive."  *Id.*

Looking to the contextual setting of Chapter 15, there is no ambiguity in the statutory language of § 103(a) about the applicability of Chapter 1, including § 109(a), to "a case under Chapter 15."  *See Robinson v. Shell Oil Co.,* 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the

language itself, the specific context in which that language is used, and the broader context of the statute as a whole."). As *In re Barnet* noted, "Congress amended Section 103 to state that Chapter 1 applies to Chapter 15 at the same time as it enacted Chapter 15." 737 F.3d at 250. "This strongly supports the conclusion that Congress intended Section 103(a) to mean what it says, namely, that Chapter 1 applies to Chapter 15." *Id.* *See* H. Rep. at 118 ("Section 802(a) amends section 103 of the Bankruptcy Code to clarify the provisions of the Code that apply to chapter 15 and to specify which portions of chapter 15 apply in cases under other chapters of title 11."). In the context of Chapters 1 and 15 and the Bankruptcy Code as a whole, the plain language of § 103(a) applying Chapter 1, including the eligibility requirements of § 109(a), to Chapter 15 cases is not ambiguous. Where the language is plain and the meaning is clear, the statutory construction does not require further inquiry. *United States v. Hoflin*, 880 F.2d 1033, 1037 (9th Cir. 1989).

Jones contends that none of Chapter 15's provisions expressly refers to § 109(a) or imposes any obligation on a foreign debtor to have property or other assets in the United States, whereas § 1501 expressly provides that Chapter 15 does not apply to an entity identified by exclusion in § 109(b), other than a foreign insurance company. Jones Opening Br. at 14. This direct reference to § 109(b) does not demonstrate any ambiguity in the applicability of § 109(a) to Chapter 15 proceedings. Section 109(b), by its own terms, excludes certain entities from debtor eligibility under Chapter 7 only. By referring to § 109(b), § 1501(c)(1) incorporates into Chapter 15 the exclusion of those same entities that are governed by specialized insolvency regimes, except for foreign insurance companies that would remain eligible for recognition under Chapter 15. *See* H. Rep. at 106. This reference in Chapter 15 to § 109(b)'s debtor exclusions does not render meaningless § 109(a)'s requirements for debtor eligibility, made applicable to Chapter 15 by operation of § 103(a). As the court noted in *In re Barnet*, "if Congress wished to exclude Chapter 15 from the reach of Section 109(a), it did not say as much," in stark contrast to the express provision in § 1501(c) applying some, but not all, of the Chapter 7

14

exclusions in § 109(b) to Chapter 15.  737 F.3d at 249.

Given the plain, unambiguous language of §§ 103(a) and 109(a), a debtor that is the subject of a foreign proceeding seeking recognition under Chapter 15 must satisfy the debtor eligibility requirement of residing or having a domicile, place of business or property in the United States.

### 2. Debtor Within the Meaning of Section 109(a)

Jones alternatively argues that § 109(a) does not apply because the Chapter 15 petition does not initiate a plenary bankruptcy case, only an ancillary proceeding, and Forge Power is not a debtor in a plenary bankruptcy case under the Bankruptcy Code. Jones Opening Br. at 15.  Jones offers no authority for the proposition that § 109(a) should be "correctly interpreted" to limit debtor eligibility requirements only to plenary proceedings under the Bankruptcy Code, or that § 109(a) does not apply to a debtor that is subject to a foreign proceeding.  The legislative history reflects that Congress understood that a petition for recognition under Chapter 15 would be ancillary to cases brought in a debtor's home country, unless a full United States bankruptcy case is brought under another chapter.  H. Rep. at 106.  Yet Jones identifies nothing in the statutory language or legislative history to suggest that Congress intended that the debtor eligibility requirements under § 109(a) would not apply to Chapter 15 proceedings.  To the contrary, Congress amended § 103(a) to provide that Chapter 1, including the debtor eligibility requirement of § 109(a), applies to Chapter 15.  H. Rep. at 105.

Jones also argues that a debtor in a foreign proceeding does not file the Chapter 15 petition; rather, the foreign representative is the petitioning party seeking recognition of a foreign proceeding, such that the requirements of § 109(a) should not govern the foreign debtor.  Jones Opening Br. at 15-16.  The Second Circuit considered and rejected this argument in *In re Barnet,* reasoning that "the presence of a debtor is inextricably intertwined with the very nature of a Chapter 15 proceeding, both in terms of how such a proceeding is defined and in terms of the relief that can be granted."  737 F.3d at 248. First, the definitions of "foreign representative" and "foreign proceeding" expressly refer to

proceedings involving the reorganization or liquidation of the debtor's assets or affairs. *Id.* (citing 11 U.S.C. §§ 101(23) and (24), 1502(1) and (4)). Second, both the automatic and discretionary relief provisions of Chapter 15 are directed towards debtors. *Id.* (citing 11 U.S.C. §§ 1520(a) and 1521). In light of this reasoning, the court adopts the Second Circuit's assessment of Jones' identical argument that the debtor eligibility requirements of § 109(a) do not apply to a Chapter 15 case because the foreign debtor does not appear before the bankruptcy court on a Chapter 15 petition for recognition: "It stretches credulity to argue that the ubiquitous references to a debtor in both Chapter 15 and the relevant definitions of Chapter 1 do not refer to a debtor under the title that contains both chapters." *In re Barnet,* 737 F.3d at 248.

Jones suggests that the requirements to commence a proceeding under Chapter 15 are entirely self-contained within Chapter 15 itself, at §§ 1504, 1515 and 1517, and that only the requirements of § 1517 are required to attain recognition, without reference to the debtor eligibility requirements of § 109. Reply Br. at 16-17. However, § 1504 expressly provides that the filing of a Chapter 15 petition for recognition commences a "case" under Chapter 15, which, regardless of its ancillary nature, is a case under Title 11. This is reflected in the legislative history of § 1504, which indicates that 28 U.S.C. § 1334(a), giving exclusive jurisdiction of all cases under title 11 to the district courts, determines the "competent court" having jurisdiction of Chapter 15 cases. H. Rep. at 95. Notably, Congress enacted § 1504 instead of Article 4 of the Model Law[7] which was designed for designating the competent court which would exercise jurisdiction under the Model Law. *Id.* The legislative history indicates that "since the competent court has been determined in title 28, this section [1504] instead provides that a petition for recognition commences a 'case,' an approach that also invokes a number of other useful procedural provisions." *Id.* Jones' unsupported argument that Chapter 15 cases should be carved

---

[7] Article 4 of the Model Law, entitled "Competent Court or Authority," provides, "The functions referred to in this Law relating to recognition of foreign proceedings and cooperation with foreign courts shall be performed by [*specify the court, courts, authority or authorities competent to perform those functions in the enacting State*]."

1   out of § 109(a)'s eligibility requirements is unpersuasive in light of the plain language of

2   § 103(a), applying Chapter 1 to Chapter 15 cases, and § 1504, recognizing that a petition

3   for recognition commences a case under Chapter 15, which necessarily is a case under

4   Title 11.

5          Related to the argument that Chapter 15 is self-contained, Jones also argues that

6   Forge Power is not a debtor under Title 11, as required by § 109(a), but satisfies § 1502's

7   special definition of debtor applicable under Chapter 15: "For the purposes of this

8   chapter, the term—(1) 'debtor' means an entity that is the subject of a foreign

9   proceeding." 11 U.S.C. § 1502(1). *See* H. Rep. at 107 ("This definition . . . is necessary

10  to eliminate the need to refer repeatedly to 'the same debtor as in the foreign

11  proceeding.'"). Jones contends that a Chapter 15 debtor is not seeking to declare

12  bankruptcy under Title 11; rather, its foreign representative is only seeking recognition of

13  the foreign proceeding. Jones Opening Br. at 16. Jones argues that Forge Power only

14  needs to meet the special definition of a "debtor" within the meaning of § 1502, and not

15  the debtor eligibility standards in § 109, to obtain recognition under Chapter 15.

16         *In re Barnet* decidedly rejected this argument because § 109(a) does not purport

17  to define the term "debtor," but "adds a requirement for the kinds of 'person' that 'may be

18  a debtor under this title.'" 737 F.3d at 249. The Second Circuit compared the definition

19  of the term "debtor" in § 101(13) ("The term 'debtor' means person or municipality

20  concerning which a case under this title has been commenced") with § 1502, which, like

21  § 101, introduces its definition with the phrase "the term—(1) 'debtor' means." 727 F.3d

22  at 249. The court reasoned that "[t]his linguistic parallelism makes clear that Section

23  1502 supplants Section 101—*i.e.*, it supplants the definition of debtor within the context of

24  Chapter 15—but it does not supplant requirements for a 'debtor under this title' not

25  included in the definition." *Id.* Distinguishing the debtor eligibility requirements of § 109

26  from the definitions of "debtor" in § 101(13) and § 1502(1), *In re Barnet* articulated that

27  § 109(a) "does not say that the term debtor 'means' anything." *Id.*

28

The court adopts the reasoning of *In re Barnet* to conclude that § 1502's definition of debtor for purposes of Chapter 15 does not render the debtor eligibility requirements of § 109(a) inapplicable to Chapter 15 cases.

### 3. Consistency Between Section 109 and Chapter 15

Jones also argues that requiring a foreign debtor to satisfy the eligibility requirements of § 109 is "fundamentally inconsistent" with the purposes of Chapter 15 and the "overall approach of the United States favoring assistance to foreign main proceedings." Jones Opening Br. at 18-19. *See* H. Rep. at 104. Jones asserts that "there is no basis in the Model Law to exclude a foreign debtor such as Forge [Power] from ancillary relief," and that, accordingly, "[t]he fact that Forge [Power] had no assets in the United States prior to funding the Retainer should not preclude Appellant—and other foreign representatives of foreign debtors that may be similarly situated—from seeking Chapter 15 relief." Jones Opening Br. at 19, 23. This is simply an argument that the statute does not say what Jones and Forge Power want it to mean.

*In re Barnet* rejected a similar argument by the foreign representatives seeking recognition there: that the purpose of Chapter 15 would be undermined by application of § 109(a). The Second Circuit determined that the stated purposes of Chapter 15, including international cooperation and fair and efficient administration of cross-border insolvencies, "could all be accomplished with or without imposition of Section 109(a)." *In re Barnet,* 737 F.3d at 250-51 (citing 11 U.S.C. § 1501(a)). Noting that the Model Law, which was incorporated by Chapter 15, does not contain a debtor eligibility requirement akin to § 109(a), the court pointed out that the Model Law provided that an enacting country "may modify or leave out some of its provisions." *Id.* at 251 (quoting Model Law Pt. 2 (Guide to Enactment) [currently ¶ 20]). The court concluded that "the omission of Section 109(a), or its equivalent, from the Model Law does not suffice to outweigh the express language Congress used in adopting Sections 109(a) and 103(a)." *Id.* The Second Circuit further considered that the foreign representatives seeking discovery in *In*

*re Barnet* could seek relief outside of Chapter 15 under other statutory provisions that are not relevant here. *Id.* at 251 and n.3 (citing 28 U.S.C. § 1782(a)).

Appellant Jones and amici assert that *In re Barnet* was wrongly decided and that Chapter 15 does not require that the debtor eligibility requirements of § 109(a) be satisfied. This is an unsettled question on which bankruptcy courts and commentators disagree. In addition to unpublished oral rulings, Jones cites kindred commentary which states, "Chapter 15 nowhere indicates that debtors in foreign proceedings must meet the section 109(a) criteria that apply to 'a debtor under this title' or that foreign proceedings involving debtors who do not meet those criteria cannot be recognized." 8 RICHARD LEVIN AND HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 1501.03 (16th ed. 2017). COLLIER refers to the intent of the Model Law to determine eligibility based on the attributes of the foreign proceeding, not of the debtor. *Id.*

Addressing *In re Barnet,* COLLIER faults the Second Circuit for failing to mention "the mandate of section 1508 to interpret chapter 15 in light of its international origin and [failing] to follow the suggestion of the legislative history of section 1508 to consult the Guide to Enactment when interpreting chapter 15." *Id.* The treatise flatly states, "The *Barnet* decision should not be followed outside of the Second Circuit." *Id.* This criticism is unwarranted. Although *In re Barnet* did not cite § 1508, the Second Circuit expressly considered the Model Law and consulted the provisions of the Guide to Enactment. 737 F.3d at 250-51. The court finds the reasoning and analysis of *In re Barnet* to be highly persuasive and consistent with the directive of § 1508 to construe Chapter 15 in light of its international origin and stated purpose of incorporating the Model Law.

Another commentator suggests that determining the eligibility of a debtor under § 109(a) at the recognition stage is consistent with the purpose of Chapter 15 because without this threshold determination, it would be a futile exercise to recognize a foreign proceeding only to find later that the foreign debtor does not qualify as a debtor under § 109(a) for purposes of the Bankruptcy Code:

19

The streamlined procedures for granting recognition to a foreign proceeding [under Chapter 15] do not allude to Code § 109(a), nor do they require proof that the foreign debtor qualifies to be a debtor under Code § 109(a) at the recognition stage, nor have any courts addressed this issue.[8] On the other hand, it may be a profligate waste of judicial resources for a court to recognize a foreign proceeding under Code § 1517, only later to rule that because the foreign debtor does not have assets or a presence in the U.S. it does not qualify to be a debtor under Code § 109(a). Thus, if in fact Code § 109(a) applies in Chapter 15 cases, as Code § 103(a) mandates and as several commentators have observed, a foreign debtor's qualifications under Code § 109(a) should be a threshold determination at the recognition stage.

8 WILLIAM L. NORTON III, NORTON BANKR. L. & PRAC. § 154:3 (3d ed. 2017) (updated online Jan. 2018).

The current edition of NORTON does not address *In re Barnet,* but is consistent with that court's determination that a debtor under Chapter 15 must qualify as eligible debtor under Title 11 in light of the automatic stay and discretionary relief provisions that apply to "the debtor" upon recognition of a foreign proceeding by operation of § 1520. *In re Barnet*, 737 F.3d at 248 ("11 U.S.C. § 1520(a) applies 11 U.S.C. §§ 361-63, 549 and 552 to 'the debtor,' 'the property of the debtor,' or 'an interest of the debtor in property,' as appropriate."). In other words, Chapter 15 does not operate in a vacuum, but entitles the foreign debtor to relief under certain provisions of Title 11, not least of which is the automatic stay under § 362 which is applicable upon recognition of a foreign main proceeding, by operation of § 1520 and subject to exceptions, with respect to the debtor and the debtor's property within the territorial jurisdiction of the United States. 11 U.S.C. § 1520(a)(1). Under Chapter 15, the automatic stay takes effect as a matter of right as provided in § 1520, supplanting former § 304, which left injunctive relief to the bankruptcy court's discretion in cases ancillary to a foreign proceeding. *See In re Goerg,* 844 F.2d 1562, 1568 (11th Cir. 1988) ("That the section 304 debtor is denied the two main benefits accorded the debtor in a full bankruptcy proceeding—automatic stay and discharge—

---

[8] This commentary, issued April 2013, predates *In re Barnet.*

1   strongly suggests that Congress did not intend that 'debtor' eligibility under the Code be a

2   prerequisite to section 304 ancillary assistance.").  In the context of the statutory

3   provisions under Chapter 15, making certain kinds of relief available to a foreign debtor

4   upon recognition of a foreign proceeding, including automatic stay upon recognition of a

5   foreign main proceeding, § 109(a)'s debtor eligibility requirements are entirely consistent

6   with the purposes of Chapter 15.

7          Along the lines of arguing that § 109 is inconsistent with Chapter 15, appellant

8   argues that § 109(a) is not applicable to Chapter 15 cases because the debtor eligibility

9   requirements would render superfluous the applicable venue statute, 28 U.S.C. § 1410.

10  Jones Opening Br. at 22-23 (citing *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)).  Jones

11  argues that §§ 1410(2) and (3) provide a venue for Chapter 15 cases even when the

12  debtor does not have a place of business or assets in the United States, demonstrating

13  congressional intent to permit Chapter 15 recognition where the foreign debtor does not

14  satisfy § 109(a), which requires that the debtor reside or have a domicile, place of

15  business or property in the United States.  The Second Circuit disposed of a similar

16  argument raised in *In re Barnet,* on the ground that the venue statute is purely procedural

17  and does not control statutory construction of the unambiguous language used in § 103

18  and § 109.  737 F.3d at 250.

19         Appellant's argument also overlooks the possibility that a foreign debtor, such as

20  an individual, may reside in the United States to satisfy § 109(a)'s eligibility requirement,

21  but not have a place of business or assets that would determine venue under § 1410(1).

22  Section 109(a) does not render the venue statute superfluous.  The plain language of

23  § 103(a) unambiguously applies § 109(a) to Chapter 15 proceedings.

24  **II.     Property Requirement Under Section 109(a)**

25         Having determined that Forge Power must satisfy the eligibility requirements of 11

26  U.S.C. § 109(a), the court reviews the question whether an attorney retainer is sufficient

27  to satisfy the "property in the United States" requirement for eligibility under § 109(a).

28

The bankruptcy court's determination that an attorney retainer, without more, is not sufficient property under § 109(a) as a matter of law is reviewed de novo.

Section 109(a) does not set parameters for how much or what kind of "property in the United States" is required for a person to be eligible as a debtor under Title 11. In the absence of controlling circuit authority, the court follows the out-of-circuit bankruptcy courts that have considered this issue and held that under the plain meaning of § 109(a), any amount of property, whether "'a dollar, a dime or a peppercorn located in the United States,'" satisfies the threshold for debtor eligibility. *In re Global Ocean Carriers Ltd.,* 251 B.R. 31 (Bankr. D. Del. 2000) (quoting *In re McTague*, 198 B.R. 428, 429 (Bankr. W.D.N.Y. 1996)). *See In re ABC Learning Centres Ltd.,* 728 F.3d 301, 308 (3d Cir. 2013) (holding that the foreign debtor's property in the United States was subject to automatic stay upon recognition of an Australian liquidation proceeding, even though the foreign debtor's assets were "entirely leveraged, leaving nothing for the liquidator to distribute to the unsecured creditors").

On the specific issue whether an attorney retainer, deposited for the express purpose of retaining counsel in the United States for Chapter 15 proceedings, would establish eligibility under § 109(a), bankruptcy courts have held that an attorney retainer held by the foreign representative's counsel provides a sufficient basis for debtor eligibility. *In re Ocean Rig UDW Inc.,* 570 B.R. 687, 699 (Bankr. S.D.N.Y. 2017); *In re Inversora Eléctrica de Buenos Aires S.A.*, 560 B.R. 650, 655 (Bankr. S.D.N.Y. 2016); *In re Berau Capital Resources Pte Ltd,* 540 B.R. 80, 82 (Bankr. S.D.N.Y. 2015); *In re Octaviar Admin. Pty Ltd,* 511 B.R. 361, 372-73 (Bankr. S.D.N.Y. 2014) (on remand from *In re Barnet*). Although appellees correctly point out that the foreign debtors in those cases also owned other property rights such as deposits in a New York bank account, contractual rights in debt instruments or legal claims, those additional property interests were not necessary to the courts' determination that the retainer qualified as property under § 109(a).

Given the absence of controlling authority on this issue, the court agrees with the rulings of the bankruptcy courts that are bound by *In re Barnet* and disagrees with the bankruptcy court's decision here requiring something more than a retainer to satisfy the property requirement of § 109(a): "When a Chapter 15 is initiated because the person in charge of the proceeding in another country delivers a retainer check to a lawyer who is going to be involved in the Chapter 15, that is not a sufficient identification of property that I believe Congress had in mind." Tr. at 75. Where the debtor seeks eligibility under § 109(a) based solely on a security retainer deposited by the debtor into a client trust account in the United States, which remains property of the client until applied to fees incurred, the property requirement is satisfied under the plain meaning of § 109(a). "A security retainer is generally held as security for payment of fees for future services to be rendered by the attorney. The retainer remains property of the client [ ] until the attorney applies it to charges for services actually rendered. Any unearned funds are returned to the client." *In re Dick Cepek, Inc.*, 339 B.R. 730, 736 (9th Cir. B.A.P. 2006) (citations omitted).

To address appellees' concerns, shared by the bankruptcy court, that a foreign debtor should not be permitted to manufacture eligibility and engage in venue tactics on the eve of filing a Chapter 15 petition, the court concludes that the statutory framework permits such strategic maneuvers to an extent by leaving the term "property in the United States" undefined. The venue statute applicable to Chapter 15 cases also contemplates that a foreign debtor might establish a basis for a particular venue shortly before filing a petition for recognition, in that § 1410 does not require contacts in the United States for the 180-day period before filing the petition, as does § 1408, which is applicable to all other Title 11 proceedings.[9] In light of the omission of this 180-day requirement from

---

[9]  Section 1408, which governs venue of cases under Title 11, except as provided in § 1410, provides that proper venue lies in the district court—
> (1)  in which the debtor's domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred

§ 1410, an attorney retainer that remains the debtor's property in the United States at the time of commencing the Chapter 15 case is sufficient property for purposes of debtor eligibility under § 109(a), without requiring something more.  The order of the bankruptcy court denying the Chapter 15 petition for recognition is therefore VACATED.

Because the bankruptcy court determined as a matter of law that a retainer, standing alone, was not sufficient property for eligibility under § 109(a), it did not reach the question whether Forge Power's retainer deposit amounted to a security retainer that is recognized as property owned by the client, or some other type of arrangement that would not remain property of the client.  *See In re Dick Cepek,* 339 B.R. at 736.  Jones moves to strike appellees' argument challenging the sufficiency of evidence of the retainer.  As APR raised its venue challenges before the bankruptcy court and the bankruptcy court expressly noted the lack of evidence concerning the retainer, Jones' motion to strike is denied.  Doc. no. 33.

Jones also seeks leave to submit Forge Power's retainer agreement for the first time on appeal.  The court denies leave to supplement the record on the grounds that the bankruptcy court did not reach the factual inquiry into the nature of the retainer to determine proper venue and the matter will be REMANDED for such determination.  The interests of justice and efficiency would not be served by considering such evidence for the first time on appeal because it will be more efficient for the bankruptcy court to rule on venue with the other issues concerning the petition for recognition that were disputed by the parties below, such as whether Forge Power's Australian proceeding qualifies as a foreign proceeding under Chapter 15.

and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period that the domicile, residence, principal place of business [or] principal assets in the United States, of such person were located in any other district; or
(2) in which there is pending a case under Title 11 concerning such person's affiliate, general partner or partnership.

**CONCLUSION**

For the foregoing reasons, the court holds that the debtor eligibility requirements of 11 U.S.C. § 109(a) apply in Chapter 15 cases and that the requirement of "property in the United States" is satisfied by a security retainer that remains the property of the debtor until the funds are applied by the attorney for services actually rendered.  The order of the bankruptcy court denying the petition for recognition is VACATED and the case is REMANDED to the bankruptcy court for further proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated:  February 12, 2018

_____

PHYLLIS J. HAMILTON
United States District Judge